UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ENITTE CABRERA

                        Plaintiff,                              24 CV 9230

                     -against-

                                                  **COMPLAINT AND**
                                                  **DEMAND FOR JURY**
                                                  **TRIAL**

PRESTON NIBLACK, as the Commissioner
of the New York City Department of Finance,
in his individual and official capacities; the
NEW YORK CITY DEPARTMENT OF
FINANCE; and the CITY OF NEW YORK,

                        Defendants.
-------------------------------------------------------------------x

## PRELIMINARY STATEMENT

      1.      New York City's Disability Rent Increase Exemption program (DRIE), which is operated by Defendants, assists eligible low-income tenants with disabilities by freezing their rents in rent-regulated apartments at their current level and exempting them from future rent increases. Defendants provide a tax credit to DRIE recipients' landlords in the amount of the difference between the frozen rent and the rent the landlord would otherwise be entitled to. A related program, the Senior Citizen Rent Increase Exemption program (SCRIE), also run by Defendants, provides the same benefit to tenants who are low-income senior citizens.

      2.      Plaintiff Enitte Cabrera is a disabled New Yorker who has been enrolled in DRIE since 2020.

1

3. She suffers from epilepsy and is vulnerable to seizures that cause her to lose consciousness and fall at unpredictable times. On more than one occasion, she has had a seizure and fallen on the stairs of her apartment building. In 2023, as a result of this life-threatening situation, her landlord offered to permit her, as an accommodation for her disability, to move to a ground floor apartment where she would no longer have to risk a potentially catastrophic fall down the stairs every time she wanted to enter or exit her home.

4. Much to Ms. Cabrera's shock and dismay, after moving into her new home, Defendants took the position that, because she moved, the City would no longer consider her rent frozen at the previous level and she would be forced to pay rent at a rate that was unquestionably unaffordable for her. Despite her requests, Defendants refused to make any accommodation for her disability.

5. Defendants' abject refusal to allow SCRIE/DRIE recipients like Ms. Cabrera to move apartments to avoid life-threatening situations without losing their subsidy constitutes an unlawful failure to provide disabled individuals with a reasonable accommodation. These unlawful acts and omissions have made Ms. Cabrera's new apartment unaffordable to her, putting her at risk of homelessness. In her despair, she moved back to her prior apartment, even though it meant risking four flights of stairs whenever she came and went from her home.

6. Now that Ms. Cabrera moved back to her original home, Defendants *again* refused to honor Ms. Cabrea's previously frozen rent, taking the position that this apartment—in which Ms. Cabrera has lived for four years—was a new apartment and that Ms. Cabrera could only re-apply for a rent freeze, which would at best be frozen at a new, higher rate. Thus, Defendants' unlawful discriminatory conduct continues to jeopardize Ms. Cabrera's ability to

stay housed, forcing her to live in an apartment she cannot afford, simply for attempting to find a home that was safe for her in spite of her disability.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (4).

8. Supplemental jurisdiction over Plaintiff's city law claims is proper under 28 U.S.C. § 1367.

9. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because the cause of action arose in the Southern District of New York, Defendants are located in this District, and the actions and omissions of Defendants giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

10. Plaintiff Evette Cabrera is a 59-year-old disabled woman who suffers from severe epilepsy, early stage dementia, arthritis, and anxiety and has been at all relevant times a resident of Bronx County.

11. Defendant New York City Department of Finance ("DOF") is a New York City agency with its principal place of business located at 66 John Street, New York, New York 10038. Defendant DOF administers the SCRIE and DRIE programs pursuant to the Real Property Law, N.Y. Real Prop. Tax Law 467, and N.Y.C. Admin. Code §§ 26-405 and 26-509.

12. Defendant Preston Niblack is the Commissioner of the DOF and has ultimate responsibility for ensuring DOF's compliance with all applicable laws, as well as ultimate responsibility for promulgating DOF's policies, procedures, and administrative regulations with

respect to, *inter alia*, the SCRIE and DRIE programs. His principal place of business is located at 66 John Street, New York, New York 10038.

13. Defendant City of New York is a municipal body created and authorized under the laws of the State of New York. It is authorized under the laws of the State of New York to maintain a Department of Finance. It is further authorized under the laws of the State of New York to implement and administer the DRIE/SCRIE programs within the City of New York.

## STATUTORY AND REGULATORY SCHEME

### SCRIE/DRIE Program

14. The Senior Citizen Rent Increase Exemption ("SCRIE") and the Disability Rent Increase Exemption ("DRIE") programs (collectively referred to as the "SCRIE/DRIE program") were enacted to ensure that elderly and/or disabled New Yorkers of limited means can stay in their homes without facing displacement, eviction, and/or homelessness as a result of rent increases.

15. The New York City Council has found that "there is an acute and continuing housing shortage [that] has and continues to have an adverse effect on the population and especially on inhabitants of the city who are sixty-two years of age or older and of limited means, as well as persons with disabilities, who cannot pay enough rent to induce private enterprise to maintain decent housing at rents they can afford to pay." N.Y. Admin. Code § 26-405(m).

16. The New York City Council further found that rising rents disproportionately affect elderly and/or disabled New Yorkers "because of their particular inability to find alternative accommodations within their means, because of the trauma experienced by many

older persons, as well as persons with disabilities, who have to relocate and because they may endanger their health by paying additional sums for shelter and thereby deprive themselves of other necessities; that hardships imposed by such people adversely affect their health and welfare and the general welfare of the inhabitants of the city." N.Y. Admin. Code § 26-405(m).

17. The SCRIE/DRIE program addresses these concerns of the City Council by freezing the rent of households headed by eligible senior citizens and qualifying individuals with disabilities who live in rent regulated housing. This is accomplished by providing a tax abatement credit to the beneficiary household's landlord equal to the difference between the SCRIE/DRIE recipients' frozen rent rate and the lawful rental rate for the recipients' dwelling.

18. The SCRIE/DRIE program is codified in N.Y. Admin. Code §§ 26-509, 26-405, 26-406 and 26-601 *et seq.*

19. The SCRIE/DRIE program is administered by Defendant DOF, pursuant to N.Y. Admin. Code §§ 26-406 and 26-509.

20. Defendant DOF is empowered to promulgate "such rules and regulations as may be necessary to effectively carry out the provisions" of the program, pursuant to N.Y. Admin. Code § 26-509 and 26-611.

21. A household is eligible for the SCRIE/DRIE program if:

    a. A designated "head of household" is 62 years old or older or has a qualifying disability;

    b. The household resides legally in a rent-regulated apartment;

    c. The household has an annual household income of $50,000 or less; and

    d. The household spends more than one third of the household's total monthly income on rent.

22. An individual has a qualifying disability for the purposes of DRIE if he/she shows proof to Defendant DOF that he/she is a recipient of, *inter alia,* Social Security Disability Insurance ("SSDI"), Supplemental Security Income ("SSI"), or a disability pension or disability compensation benefit through the United States Department of Veterans Affairs. N.Y. Admin. Code § 26-509(b)(2)(i).

23. A household approved for the SCRIE/DRIE program maintains their frozen rent until the expiration of the household's lease, at which point the household may recertify its eligibility for continued SCRIE/DRIE benefits, thus maintaining the previously frozen rent rate.

## Americans with Disabilities Act

24. The Americans with Disabilities Act ("ADA") 42 U.S.C. 12101 *et seq.*, prohibits a public entity from denying benefits to individuals because of their disability, or otherwise discriminating against disabled individuals.

25. The ADA defines public entities as "any State or local government" and "any department, agency, … or other instrumentality of a State or local government." 42 U.S.C. § 12131(1).

26. A disability under the ADA is defined broadly to include "a physical or mental impairment that substantially limits one or more major life activities" including, *inter alia*, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at §§ 12102(1), (2), (4).

## Fair Housing Act

27. The Fair Housing Act (Title VIII of the Civil Rights Act of 1968) (hereinafter "FHA"), 42 U.S.C. § 3601 *et seq.*, makes it unlawful for to "refus[e] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

28. The FHA's implementing regulations further note that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by the FHA. 24 C.F.R. § 100.400.

## New York City Human Rights Law

29. The New York City Human Rights Law ("NYCHRL"), New York Administrative Code 8-101 *et seq.*, makes it an unlawful discriminatory practice for public accommodations "directly or indirectly, to refuse, withhold from or deny" individuals with disabilities "the accommodations, advantages, facilities or privileges thereof." N.Y. Admin. Code § 8-107(4).

30. A "public accommodation" is defined in the NYCHRL as a provider of services, facilities, accommodations, advantages or privileges of any kind. N.Y. Admin. Code § 8-102.

31. The NYCHRL requires public accommodations to "make reasonable accommodation to enable a person with a disability to … enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y. Admin. Code § 8-107(15)(a)

32. Under the NYCHRL, reasonable accommodation "means such accommodation that can be made that does not cause undue hardship in the conduct of the covered entity's business. The covered entity has the burden of proving undue hardship." N.Y. Admin. Code § 8-

7

102. The factors to be considered when determining undue hardship include, "the nature and cost of the accommodation;" "the overall financial resources of the facility or the facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;" and "the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees, the number, type, and location of its facilities." *Id.*

33. The NYCHRL further states that "[i]t shall be an unlawful discriminatory practice for the owner . . . or managing agent of . . . a housing accommodation . . . to discriminate against any person because of such person's . . . disability." § 8-107 (5).

34. A disability is defined under the NYCHRL as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." *Id.*

## STATEMENT OF FACTS

35. Plaintiff Enitte Cabrera is 59 years old and resides by herself in an apartment at 1995 Creston Avenue, Bronx, New York 10451. Her apartment is a rent stabilized fourth-floor walk-up. Her only income is $934/month from combined Social Security Retirement and Supplemental Security Income. The rent for her apartment is currently $864.86 per month.

36. From 2020 to 2023, Ms. Cabrera's rent at Creston Avenue was frozen via the DRIE program at $755.55 per month.

37. Ms. Cabrera has suffered from severe epilepsy since 2003. Her epilepsy causes her to have uncontrollable seizures. On average, Ms. Cabrera suffers from two seizures per week.

38. The onset of these seizures is random and unpredictable. The seizures range from mild or moderate seizures causing minimal disruption or temporary disorientation to intense convulsions, loss of consciousness, and injuries from falls.

39. Twice already, Ms. Cabrera has fallen on the stairs of her building due to seizures. Both of these falls were approximately three years ago.

40. Ms. Cabrera suffers from ongoing pain in her knees due to her frequent falls and arthritis.

41. Ms. Cabrera has the assistance of a home health care worker that assists her six days per week and accompanies her as she navigates the stairs.

42. Ms. Cabrera also utilizes the assistance of her family members to collect groceries, assist with daily tasks and keep her safe going up and down the stairs.

43. Nevertheless, Ms. Cabrera feels trapped in her apartment, afraid to leave and navigate four flights of stairs without assistance.

44. In early 2023, Ms. Cabrera asked her epilepsy specialist to provide her a letter explaining that she needed to move from her Creston Avenue apartment to a lower level apartment due to her condition, to ensure that she could safely come and go from her home without falling down the stairs.

45. In or around February 2023, Ms. Cabrera received the letter, provided it to her building management, and requested a move to a lower level apartment in the building management's portfolio as a reasonable accommodation for her disabilities.

46. Federal, state, and city law provide that landlords must provide disabled tenants with reasonable accommodations to allow them to live in and enjoy their apartments. It is not

unusual for landlords to provide an accommodation of a move to a first-floor apartment, where available, for someone who's disability prevents them from using stairs.

47. Ms. Cabrera's landlord agreed to accommodate her, as it was required to do by federal, state, and city law. She then began working with Ramona Rosa, the leasing agent at Cornell Pace Inc., the management company working with Ms. Cabrera's landlord, Mount Hope Preservation LLC.

48. Ramona Rosa showed Ms. Cabrera three apartments in the nearby area that were vacant and available to be rented.

49. After viewing the apartments, Ms. Cabrera stated that she was interested in an apartment located at 1821 Davidson Avenue, Bronx, NY 10453 because it was on the ground floor and had a side entrance accessible to the street.

50. Ms. Cabrera asked Ms. Rosa what the rent was at the Davidson Avenue apartment.

51. Ms. Rosa stated that the rent at the available ground floor apartment was approximately $1600, but that because Ms. Cabrera was a participant in the DRIE program, her rent would remain frozen at $755.50, the amount she was paying at the time for her fourth-floor apartment.

52. The new ground-floor apartment had one less bedroom than the apartment Ms. Cabrera was then living in, but Ms. Cabrera was willing to lose one bedroom to gain the security of being able to leave her apartment without assistance or fear of falling.

53. Ms. Rosa stated that she would handle the transfer of Ms. Cabrera's DRIE subsidy.

54. Assuming, reasonably, that her subsidy would move with her, Ms. Cabrera agreed to move to the Davidson Avenue apartment.

55. On March 1, 2023, Ms. Cabrera officially commenced her tenancy at the Davidson Avenue apartment.

56. For the first two months residing at the Davidson Avenue apartment, Ms. Cabrera paid $755.50 in rent.

57. Thereafter, Defendant DOF sent Ms. Cabrera a notice stating that her subsidy had successfully transferred but that her rent would *not* be frozen at the prior amount—instead, Ms. Cabrera was now responsible for paying $1524.75 in rent at the Davidson Avenue apartment, more than double than what she had previously paid and almost 50% more than her entirely monthly income.

58. Ms. Cabrera's building management company could not explain why DOF had made this decision.

59. Distraught and terrified that she would be evicted and become homeless, as she could not afford this rent on her meagre Social Security income, Ms. Cabrera contacted the Bronx Borough President's office in person for assistance in May of 2023.

60. The Bronx Borough President's office reached out to Defendant DOF regarding the subsidy transfer but received no response.

61. During this time, Ms. Cabrera fell predictably behind on her rent, which was substantially less than her entirely monthly income, and was facing eviction in Housing Court as a result.

62. Ms. Cabrera experienced severe and ongoing stress from being sued in Housing Court for nonpayment of rent and threatened with eviction. For nearly a year, she lived in

constant fear of losing her home, a situation that would have caused her significant hardship. Even now, the stress from the eviction proceedings continues to affect her. As a result, her seizures have become more frequent and intense, with no improvement over time.

63. In her continuing quest to understand what had happened to her previously frozen rent under DRIE, Ms. Cabrera travelled in person to the Department of Finance's office at 66 John Street, 2nd Floor, New York, NY, 10038 for assistance.

64. She explained that she had transferred apartments as a reasonable accommodation for her epilepsy, showed the office letters from her doctor explaining her epilepsy, and requested that the Department of Finance revert her frozen rent amount under her DRIE subsidy to the previous amount, so that she would be paying the same $755.55 per month she had been paying previously.

65. She was told that this was against policy, and that under Defendants' policy, she was required to pay the $1524.75 in rent at her new apartment.

66. After this, Ms. Cabrera retained Bronx Legal Services to assist her with further contacts with the Department of Finance and to represent her in her Housing Court case.

67. On two separate occasions, Bronx Legal Services reached out to the Department of Finance to request that, as a reasonable accommodation, it adjust Ms. Cabrera's DRIE, so that she could continue to pay $755.50 in her new apartment.

68. Both times, through its Ombudsman, the Department of Finance declined to accommodate to Ms. Cabrera.

69. In or around May 2024, counsel for Mount Hope Preservation LLC informed Bronx Legal Services that Ms. Cabrera's old apartment at Creston Avenue had become available

and offered to transfer Ms. Cabrera back to her old apartment if she agreed to pay the balance of rent that had accrued at the ground-floor Davidson Avenue apartment.

70. Ms. Cabrera agreed to pay the accrued outstanding rent at the ground-floor apartment, then totaling $22,207.50, in exchange for Mount Hope Preservation LLC's agreement to return her to her prior apartment on Creston Avenue, so that Ms. Cabrera could avoid homelessness. Ms. Cabrera was only able to obtain this money for arrears as a result of an emergency rental assistance grant from the New York City Human Resources Administration. As a result, the case is ready to be discontinued, and counsel for Ms. Cabrera and her landlord are negotiating the details of the discontinuance.

71. Ms. Cabrera moved back into her old fourth-floor apartment on Creston Avenue in late May, 2024, even though it remains dangerous for her because of her epilepsy.

72. On May 29, 2024, Ms. Cabrera signed a new lease for her old apartment, for which the rent was now $864.56.

73. Had Ms. Cabrera never moved and sought to a safer place to live in spite of her disabilities, she would still have been paying $755.55 per month, with her DRIE subsidy paying the $109.01 difference.

74. However, because of Defendants stated policy, to which Defendants have refused to make reasonable modifications to accommodate Ms. Cabrera's disability, Ms. Cabrera's DRIE subsidy is instead frozen at this new rate, meaning that Ms. Cabrera is receiving *no* subsidy at all and paying $109.06 more than what she was paying prior to ever requesting a reasonable accommodation.

75. In September, 2024, Ms. Cabrera's counsel wrote to Defendant DOF's General Counsel, requesting that Defendant DOF accommodate Ms. Cabrera's disability, including by, at

the very least, honoring her prior frozen rent at this exact apartment, essentially restoring her subsidy to what it would have been had she never requested an accommodation.

76. To date, counsel for Ms. Cabrera has received no response from Defendants.

77. Ms. Cabrera now lives in the *same apartment* where she paid $755.55, and yet is paying more merely because she attempted to avail herself of the reasonable accommodations that federal, state, and city law require from landlords for people with disabilities, like Ms. Cabrera, and to which her landlord had agreed. Yet, because of Defendants' unlawful refusal to accommodate her disabilities, Ms. Cabrera continues to live in an apartment that endangers her life and health, while paying 93% of her monthly income towards rent—leaving her with *less than $70 per month* to survive on.

## FIRST CAUSE OF ACTION

### Violation of the Americans with Disabilities Act

78. Plaintiff is disabled within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.*

79. Defendants are public entities within the meaning of the ADA.

80. Defendants' refusal to adjust Ms. Cabrera's DRIE benefit to allow her to transfer to an apartment that does not constitute a danger to her health and physical well-being constitutes a failure to provide a reasonable accommodation and unlawful discrimination under the ADA.

81. Defendants' refusal to, at the very least, continue Ms. Cabrera's subsidy at the rate she was receiving prior to her attempt to find a safer apartment similarly constitutes a failure to provide a reasonable accommodations and unlawful discrimination, as well as retaliation, under the ADA.

## SECOND CAUSE OF ACTION

### Violation of the Fair Housing Act

82. The FHA, 42 U.S.C. § 3601 *et seq.*, makes it unlawful for to "refus[e] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

74. The FHA prohibits any individual from interfering with someone's exercise or enjoyment of other rights under the FHA, including the right to be free from disability discrimination and to have one's disability reasonably accommodated. 24 CFR § 100.400

75. Defendants' refusal to adjust Ms. Cabrera's DRIE benefit to allow her to enjoy the reasonable accommodation for her disability that her landlord offered her, as it was required to do under the FHA, constitutes unlawful discrimination and interference with her enjoyment of her rights under the FHA.

## THIRD CAUSE OF ACTION

### Violation of the New York City Human Rights Law

76. Plaintiff is disabled within the meaning of the New York City Human Rights Act ("NYCHRL"), N.Y. Admin. Code § 8-101 *et seq.*

77. Defendants constitute public accommodations within the meaning of the NYCHRL.

78. Defendants' refusal to adjust plaintiff's DRIE benefit to allow her to transfer to an apartment that does not constitute a danger to her health and physical well-being constitutes a failure to provide a reasonable accommodation and unlawful discrimination under the NYCHRL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

a. Declaring the acts and practices complained of herein to be violations of the, the Americans with Disabilities Act, the Fair Housing Act, and the New York City Human Rights Law;

b. Directing Defendants to make Plaintiff whole for the rent overcharges she has paid due to Defendants' unlawful acts and omissions complained of herein, including prejudgment interest;

c. Directing Defendants to honor tax abatement credits to the Plaintiff's landlord in the amount that Defendants would have done but for their unlawful failure to accommodate Plaintiff;

d. Directing Defendants to adjust the amount of the aforementioned tax abatement credit to be given to Plaintiff's landlord so as to preserve Plaintiff's previously frozen rent while permitting Plaintiff to move to a new apartment that will accommodate her disabilities;

e. Directing Defendants to make Plaintiff whole for the fear and suffering she has experienced as a result of Defendants' unlawful acts and omissions complained of herein;

f. Directing Defendants to pay Plaintiff punitive damages;

g. Issuing a permanent injunction against Defendant DOF:

   i. Requiring Defendant DOF to establish effective procedures to accommodate SCRIE/DRIE recipients and applicants with disabilities when they need to move from one apartment to another due to a disability; and

   ii. Requiring Defendant DOF to appropriately train their staff concerning the requirements of the Americans with Disabilities Act, the Fair Housing Act, and the New York City Human Rights Law;

h. Awarding Plaintiff reasonable fees and costs; and

i. Granting such other relief as this Court deems necessary and proper.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues.

Dated: New York, New York
December 3, 2024

Respectfully submitted,

_____/s/_____

Christopher Lamb
LEGAL SERVICES NYC – BRONX
349 East 149th St. 10th Fl.
Bronx, NY 10451
(718) 928-3723
clamb@lsnyc.org

Carolyn Norton
Melissa Banks
LEGAL SERVICES NYC
40 Worth Street, Suite 606
New York, NY 10013
(646) 442-3658
cnorton@lsnyc.org
mbanks@lsnyc.org

*Attorneys for Plaintiff*